UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | : | 3:21 CR 98 (JBA) |
| | : | |
| V. | : | |
| | : | |
| KENSTON HARRY | : | DECEMBER 27, 2021 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO SUPPRESS EVIDENCE**

  The defendant, Kenston Harry, respectfully files this memorandum of law in support of his motion to suppress evidence. Mr. Harry seeks suppression of the evidence and fruits obtained from the search of his cellphone and from the installation of a pole camera outside the business that he owns and operates at 2814 Main Street in Hartford.

  This evidence must be suppressed because:

  1.  The search warrant for **Mr. Harry's cellphone** (a) lacked content and temporal particularity; and (b) law enforcement unreasonably delayed searching the phone for 47 days.

  2.  The warrantless placement of a **pole camera** outside 2814 Main Street permitted uninterrupted video recording at that location and thereby unreasonably intruded on Mr. Harry's reasonable expectation of privacy.

**I.  GENERAL FOURTH AMENDMENT PRINCIPLES**

  The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A Fourth Amendment search occurs when the government violates a subjective expectation of privacy in

the area searched, and the expectation is one that society is willing to accept as reasonable. United States v. Fields, 113 F.3d 313, 320 (2d Cir. 1997). Put another way, a Fourth Amendment search occurs when "the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects." United States v. Smith, 967 F.3d 198, 205 (2d Cir. 2020).

Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing . . . reasonableness generally requires the obtaining of a judicial warrant." Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 653 (1995). A search warrant "ensures that the inferences to support a search are drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14 (1948) (internal quotations omitted).

"[P]robable cause to search is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39; United States v. Clark, 638 F.3d 89, 93 (2d Cir. 2011) (citing Gates, 462 U.S. at 238) ("totality of the circumstances" must provide "a substantial basis" for making the probable cause determination).

**II.     ARGUMENT**

    **A.     Evidence Seized From Mr. Harry's Cellphone Must Be Suppressed Because (a) The Warrant Lacked Content And Temporal Particularity; And (b) Law Enforcement Waited 47 Days To Search The Phone, An Unreasonably Long Delay**

*Relevant Facts:* A search warrant for Mr. Harry's cellphone was signed by the Court, Vatti, M.J., on June 8, 2021. The scope of the authorized search was guided by the language in Attachments A and B to the warrant, which is discussed below. Law enforcement seized the phone from Mr. Harry during his arrest the next day, June 9. The June 8 warrant authorized not only the seizure of the phone, but also its forensic examination. **(Exhibit A, filed under seal)**. Despite having possession of the phone since June 9, law enforcement did not complete the examination until 47 days later on July 26. **(Exhibit B, filed under seal)**. Upon information and belief, the discovery does not indicate when the agents began the extraction process, but since such extractions typically take a matter of hours, or one or two days at most, it is reasonable to infer that the search did not begin until on or about July 26.

*Argument:* Evidence obtained from Mr. Harry's cellphone must be suppressed for either of two reasons: (a) the search warrant lacked content and temporal particularity; and (b) law enforcement did not complete its forensic examination of the phone for 47 days.

*First*, the search warrant lacked particularity. "The chief evil that prompted the framing and adoption of the Fourth Amendment was the indiscriminate searches and seizures conducted by the British 'under the authority of general warrants.'" United States v. Galpin, 720 F.3d 436, 445 (2d Cir. 2013) (internal quotations omitted) (quoting Payton v. New York, 445 U.S. 573, 583 (1980)). As a result, search warrants must "particularly describ[e] the place to be searched and the persons or things to be seized." Maryland v. Garrison, 480 U.S. 79, 84 (1987). "The manifest purpose of this particularity requirement was to prevent general searches. By limiting

3

the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is 'defined by the object of the search. . . .'" Id. (citations omitted); 650 Fifth Ave. v. Alavi Found., 830 F.3d 66, 98 (2d Cir. 2016) (quoting Garrison, 480 U.S. at 84). "The Fourth Amendment's requirements regarding search warrants are not 'formalities.'" United States v. Voustianiouk, 685 F.3d 206, 210 (2d Cir. 2012) (quoting McDonald v. United States, 335 U.S. 451, 455 (1948)). "To prevent such 'general, exploratory rummaging in a person's belongings,' and the attendant privacy violations, the Fourth Amendment provides that a 'warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity.'" Galpin, 720 F.3d at 445 (citing Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971); Kentucky v. King, 563 U.S. 452, 459 (2011)). The particularity requirement demands that the warrant identify the items to be seized with reasonable certainty. George, 975 F.2d 72, 75 (2d Cir. 1992).

With one limited exception, the warrant for Mr. Harry's cellphone did not identify the areas of the phone to be searched. Instead, the warrant focused on excessively broad categories of information – "[a]ll records and information contained on the [cellphone] . . . that constitute evidence and instrumentalities of violations of [federal law]" and "[a]ny and all data. . . ." or "[e]vidence indicating. . . ." – but there was generally no indication about *where* in the phone's numerous depositories the agents were permitted to look for this information. (See Attachment B to the warrant, and generally ¶¶ (a) to (i) and (k) to (m)). Such broad language impermissibly allowed law enforcement to "rummage through and seize nearly any conceivable paper and electronic document. . . ." on Mr. Harry's phone. See United States v. Zemlyansky, 945 F.

4

Supp.2d 438, 457 (S.D.N.Y. 2013); United States v. Rosa, 626 F.3d 56, 58 (2d Cir. 2010) (warrant that permitted search of "computer equipment" and "electronic digital storage media" lacked particularity).

The sole exception is paragraph (j), which lists a few areas of the phone to be searched, including "address books, contact lists, all log history, stored usernames [and] stored passwords," as well as photographs, videos, search history, internet browsing history and location information. But these more specific categories in no way limited the agents' ability to peruse and extract the contents of the entire device, in violation of the Fourth Amendment. See United States v. Tisdol, ___ F. Supp.3d ___, 2021 U.S. Dist. Lexis 107821, *20, 2021 WL 2349753 (D. Conn. June 9, 2021) ("[t]he Government's natural desire to have a complete understanding of the facts, standing alone, likely does not always justify seeking the total inventory of an individual's history through the data on his or her cell phone") (citing Galpin, 720 F.3d at 447). If anything, the odd juxtaposition of a few specific locations in the same warrant that authorized a widespread general search for "[a]ny and all data" risked confusing the searching agent. See, e.g., Zemlyansky, 945 F. Supp.2d at 460 ("[t]he oddity of separately including unlimited terms for 'computers' and 'thumb drives,' and then including a laundry list of purportedly limiting electronics-related provisions that partly overlap with those blanket terms, could well create confusion on the part of an officer committed to properly executing the warrant.")

The warrant also lacked temporal particularity. A "temporal limitation" is an "indic[ium] of particularity." Id., 459 (citation omitted). Although the indictment alleged criminal activity from January 2020 to June 8, 2021, no such time limit moderated the scope of the search. Through its silence as to time period, the warrant permitted law enforcement to review information that preceded the relevant period that began in January 2020. There is no

justification for such an expansive search given the clear timeframe alleged in the indictment and the relative ease with which the affiant could have limited the temporal scope of the search.

The absence of temporal particularity requires suppression of any evidence derived from the phone. See Wey, 256 F. Supp.3d at 387 ("the Warrants undisputedly fail to limit the items subject to seizure by reference to any relevant timeframe or dates of interest. They do so despite the underlying Affidavits — and, ultimately, the Indictment — identifying timeframes, and often rather precise timeframes at that, for suspected criminal activity in relation to each of the Issuers purportedly implicated in Wey's suspected scheme"); Zemlyansky, 945 F. Supp.2d at 454; United States v. Levy, 2013 WL 664712, *30-31 n.7, 2013 WL 664712 (S.D.N.Y. Feb. 25, 2013) ("[s]everal courts in this Circuit have recognized the constitutional questions that are raised by the lack of a specific date range in a warrant for documentary records and warned the [g]overnment to include one when possible") (citations omitted).

*Second*, the 47-day delay from seizure of the cellphone to completion of the forensic examination was unreasonably long and also results in suppression. The Second Circuit has adopted a four-factor test to determine whether law enforcement's delay in obtaining a warrant to search the contents of a phone was unreasonable. See United States v. Smith, 967 F.3d 198 (2d Cir. 2020). Those factors are: "(1) the length of the delay, (2) the importance of the seized property to the defendant, (3) whether the defendant had a reduced property interest in the seized item, and (4) the strength of the state's justification for the delay." The Court applied this test to hold unreasonable a 31-day delay between seizure of the defendant's tablet computer and the application for a search warrant. The Court reasoned, in part, that if there is probable cause to seize the item, that probable cause can be promptly articulated in a search warrant application. Id., 206-07. "A month-long delay [to apply for a warrant] well exceeds what is ordinarily

6

reasonable." Id., 207. All four Smith factors support Mr. Harry's argument that the 47-day delay between seizure and search was unreasonable.

*First*, the process of downloading the contents of a cellphone takes no more than a few hours, or perhaps one or two days at most. The process is also largely passive in the sense that it involves connecting the phone to a device that performs the download without requiring much effort from an agent who is free to perform other tasks while the process takes place. There is no excuse for a relatively short and non-labor-intensive task to take 47 days. This is all the more true because the agents were able to unlock the phone when Mr. Harry was arrested, so there was no need to undertake the time consuming and cumbersome task of penetrating his password.

*Second*, there can be no dispute that Mr. Harry's cellphone was important to him. The government conceded as much in relation to unincarcerated people (like Mr. Harry) in Tisdol, 2021 U.S. Dist. Lexis 107821, *13. As a general matter, cellphones have become indispensable devices in modern society and are rarely more than a few feet away from their owners. Cellphones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." Riley v. California, 573 U.S. 373, 134 S. Ct. 2473, 2484 (2014). The language used to the describe the seized tablet in Smith is equally applicable to a cellphone, if not more so: "a personal tablet computer . . . is typically used for communication and for the storage of immense amounts of personal data. The sheer volume of data that may be stored on an electronic device like a . . . tablet . . . raises a significant likelihood that much of the data on the device . . . will be deeply personal and have nothing to do with the investigation of criminal activity." Smith, 967 F.3d at 207. This includes "[t]ax records, diaries, personal photographs, electronic books, electronic media, medical data, records of internet searches, banking and shopping information. . . ." Id.

"Special concerns" therefore apply when personal devices like tablets and cellphones are seized. See id. Just as there is a direct relationship between the length of delay to obtain a warrant and the infringement of the person's possessory interest in a particular possession, id., 209, the extent of an infringement also increases as the time between seizure to search increases. The importance of Mr. Harry's cellphone, when balanced against a 47-day delay to examine the phone, means the second Smith factor supports Mr. Harry.

*Third*, Mr. Harry had no reduced property interest in his phone. A cellphone is not contraband; he owned the phone; it was password protected; it was seized from his person when he was arrested; and he did not consent to the seizure. See id., 208; Tisdol at *14.

*Fourth*, the government had no reasonable justification for the delay. The search warrant was issued on June 8; the phone was seized on June 9; the relatively passive task of downloading the phone's contents reasonably would have taken a few hours or one or two days at most. Such a delay is not reasonable under these circumstances.

What occurred here is even more troubling than the delayed search in Smith because this delay was not only longer, but the search took longer than in Smith despite the agents having a search warrant in hand when they seized the phone on June 9. The agents could have searched Mr. Harry's phone soon after without the need to apply for a warrant whereas the agents in Smith still required a warrant when they seized the defendant's tablet. See Smith, 967 F.3d at 205 ("[w]e demand expediency in obtaining a search warrant to search seized evidence in order to avoid interfering with a continuing possessory interest for longer than reasonably necessary, in case the search reveals no evidence (or permissibly segregable evidence) of a crime and the item has no independent evidentiary value and is not otherwise forfeitable") (quoting United States v. Sparks, 806 F.3d 1323, 1340 (11th Cir. 2015)). Unnecessary delays also undermine the criminal

justice process by preventing courts from "promptly evaluating and correcting improper seizures." Smith, 967 F.3d at 205 (citation omitted). "What, after all, is 'reasonable' about police seizing an individual's property on the ground that it potentially contains relevant evidence and then simply neglecting for months or years to search that property to determine whether it really does hold relevant evidence needed for trial or is totally irrelevant to the investigation and should be returned to its rightful owner?" Id., 206 (quoting United States v. Christie, 717 F.3d 1156, 1162 (10th Cir. 2013) (Gorsuch, J.)). Because all four Smith factors support Mr. Harry, and the agents had already obtained a search warrant when they seized his phone, the delayed search was unreasonable and the motion to suppress must be granted.

> **B.      Evidence Obtained From The Warrantless Placement Of A Pole Camera That Captured The Activities Outside 2814 Main Street In Hartford Must Be Suppressed Because The Uninterrupted Recording Of Such Activity Infringed Mr. Harry's Expectation Of Privacy**

*Relevant Facts:* Law enforcement installed a pole camera outside Mr. Harry's business at 2814 Main Street in Hartford. Upon information and belief, the discovery provided by the government does not indicate when the pole camera was installed, and it appears to have been installed without a search warrant. The pole camera allowed for ongoing visual surveillance from a remote location and allowed the agents to zoom in on the activities occurring outside 2814 Main Street.

*Argument:* Law enforcement has traditionally been permitted to make observations from publicly accessible locations. California v. Ciraolo, 476 U.S. 207, 213 (1986) ("[t]he Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.") But "[w]ith the benefits of more efficient law enforcement [technological] mechanisms comes the burden of corresponding constitutional responsibilities." Arizona v. Evans, 514 U.S. 1, 17-18 (1995)

9

(O'Connor, J., concurring). "It would be foolish to contend that the degree of privacy secured to citizens by the Fourth Amendment has been entirely unaffected by the advance of technology." Kyllo v. United States, 533 U.S. 27, 33-34 (2001).

The implication of advancing technology on privacy interests has caused some courts to consider whether prolonged pole camera surveillance constitutes a Fourth Amendment search for which a warrant is required. See, e.g., United States v. Vargas, 2014 U.S. Dist. Lexis 184672 (Shea, J., E.D. Wa. Dec. 15, 2014) (six-week pole camera surveillance of defendant's front yard was a search); State v. Jones, 903 N.W.2d 101 (S.D. 2017) (two-month pole camera surveillance of defendant's home was a search). In Vargas, the court reasoned that "society expects that law enforcement's continuous and covert video observation and recording of an individual's front yard must be judicially approved. . . ." 2014 U.S. Dist. Lexis 184672, *17. "Hidden video surveillance is one of the most intrusive investigative mechanisms available to law enforcement. The sweeping, indiscriminate manner in which video surveillance can intrude upon us, regardless of where we are, dictates that its use be approved only in limited circumstances." Id., *27 (quoting United States v. Nerber, 222 F.3d 597, 600 (9th Cir. 2000) (warrantless installation of video camera in hotel room where controlled drug transaction occurred violated defendants' reasonable expectation of privacy once confidential informant left room, leaving defendants there alone)).

This reasoning is sound and applies to Mr. Harry's business location just as it would if the pole camera had been installed outside his home. The temptation to conclude that a pole camera placed outside a business does not implicate constitutional concerns as it would if placed outside a person's home should be resisted. While the home is considered "the first among equals" in the Fourth Amendment context, Collins v. Virginia, 138 S. Ct. 1663, 1670 (2018),

there can be no dispute that Mr. Harry has a reasonable expectation of privacy in the business that he owns and operates. See United States v. Chuang, 897 F.2d 646, 649 (2d Cir. 1990) ("[i]t is well-settled that a corporate officer or employee in certain circumstances may assert a reasonable expectation of privacy in his corporate office, and may have standing with respect to searches of corporate premises and records"); Katz v. United States, 389 U.S. 347, 359 (1967) ("[w]herever a [person] may be, he is entitled to know that he will remain free from unreasonable searches and seizures.") That Mr. Harry may have been entitled to greater protection from the government's prying eyes at his home as compared to his business does not mean that covert governmental surveillance at all times, day or night, for weeks or months, is not a search. The pole camera allowed the agents to know when Mr. Harry came and went from work, just as it would at his house, and it also revealed how many customers entered his store, just as a residential pole camera would have revealed when his guests arrived and departed. Indeed, it is reasonable to conclude that there was more traffic in and out of Mr. Harry's store than at his home, which therefore gave the agents more information about who came and went than if the pole camera had been installed outside Mr. Harry's home.

Arguments against suppression of pole camera video may include that pole cameras are mounted in locations that are publicly accessible, and thus, not a constitutional violation. See Ciraolo, 476 U.S. at 213. This premise is incorrect. The ground or sidewalk below the pole that houses the camera may be public, but it does not follow that the elevated vantage point of a pole camera is also open to the public. Ordinary citizens do not climb utility poles to get a more expansive view of the surroundings; access to telephone and utility poles is limited to authorized personnel and is inaccessible to the general public and those without specialized climbing equipment. And citizens do not expect the government to continuously monitor, from high

11

above, their comings and goings and other activities on their property (or those of their customers or business associates). Accordingly, the motion to suppress evidence derived from the pole camera must be granted.

## III. CONCLUSION

For the foregoing reasons, this Court should suppress all evidence derived from the search of Mr. Harry's cellphone and from the pole camera mounted outside 2814 Main Street in Hartford.

**THE DEFENDANT**
**KENSTON HARRY**

By: *s/ Jeffrey C. Kestenband*
Jeffrey C. Kestenband, ct19003
The Kestenband Law Firm LLC
2389 Main Street
Glastonbury, CT 06033
Tel. No.: (860) 659-6540
Fax No.: (860) 397-6550
jkestenband@kestenbandlaw.com

*of counsel to*
Butler, Norris & Gold
254 Prospect Avenue
Hartford, CT 06106
Tel.: (860) 236-6951
Fax: (860) 236-5263
jkestenband@bnglaw.com

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was filed electronically, on this 27th day of December, 2021, and sent by first-class mail, postage prepaid, to anyone unable to accept electronic filing. Notice of the filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*s/ Jeffrey C. Kestenband*