UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KENSTON HARRY | Criminal No. 3:21cr98 (JBA)<br><br>September 22, 2022 |

**ENDORSEMENT ORDER**

Defendant Kenston Harry has filed two motions in limine [Doc. # 514]: to exclude a recorded jail call between himself and Tajh Wiley and to preclude testimony that "white girl" refers to fentanyl in the absence of a reliable foundation. For the following reasons, both motions are DENIED.

**I.    Recorded Call Between Defendant and Tajh Wiley**

Defendant Harry claims a recorded call between himself and Tajh Wiley that took place while Wiley was incarcerated at the Westchester Department of Corrections violated his Fourth Amendment privacy rights. *See generally United States v. Salvucci*, 448 U.S. 83 (1980). Because Wiley initially called a third party, who then dialed Defendant in, Defendant asserts that he never received the prison's pre-recorded notification that the call was being recorded, and thus never consented to the recording or use of the call. (Def. Mot. in Limine.)

A similar situation arose in *United States v. Booth,* where a third party, Ms. Burke, placed a call to an incarcerated inmate, Mr. Cuff; Ms. Burke then connected Mr. Cuff to Mr. Booth, who was not incarcerated at the time. No. 99 CR. 378 LBS, 1999 WL 1192317, at *1 (S.D.N.Y. Dec. 14, 1999). When the government subsequently sought to use the call in Mr. Booth's criminal proceeding, he challenged the recording and use of the call as inadmissible because it violated his privacy rights under the Fourth Amendment. *Id*. Relying on Second Circuit precedent establishing that "the Fourth Amendment requires that only one party to an intercepted conversation consent to the recording in order for it to be admissible," the

court held "the need for maintaining institutional security, when considered in conjunction with the notification that inmates and non-inmates receive with respect to monitoring policies, is sufficient to establish the reasonableness of the seizure in question." *Id.*; *see also United States v. Willoughby*, 860 F.2d 15, 19 (2d Cir. 1988) (holding that "[g]iven the institution's strong interest in preserving security . . . the interception of calls from inmates to noninmates does not violate the privacy rights of the noninmates.")

Here, Defendant does not dispute that Wiley (and the third party who connected Wiley and Harry) would have received a notification that the call would be recorded, and "[w]hen a prison inmate receives notice of the fact that the prison will monitor all of his outgoing calls and nevertheless decides to use the telephone, he has impliedly consented to those calls being recorded." *Booth*, 1999 WL 1192317 at *12. Mr. Wiley's consent thus makes the call admissible, and so the motion is DENIED.

## II.     Testimony that "White Girl" is Slang for Fentanyl

Defendant Harry moves to preclude evidence that "white girl" refers to fentanyl "in the absence of a reliable foundation," and to compel production of any documents that the government's expert will rely on in testifying to the drug nomenclature. (Def. Mot. in Limine.)

Testimony by a law enforcement agent on coded words used by narcotics traffickers and dealers is an appropriate topic for expert testimony. *See* Fed. R. Evid. 702, Advisory Committee Notes (explicitly contemplating testimony by a law enforcement agent "regarding the use of code words in a drug transaction" and explaining that "so long as the principles and methods [used by the law enforcement officer] are reliable, this type of testimony should be admitted"); *United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003) (affirming the appropriateness of expert testimony by a law enforcement officer on "code words [that] referred to specific drugs"); *United States v. Mejia*, 545 F.3d 179, 189 (2d. Cir. 2008) (discussing the Second Circuit's approval of "law enforcement officers [testifying] as experts about the meaning of jargon relating to narcotics trafficking.").

This general rule does not put expert testimony by law enforcement officers beyond the Court's scrutiny; if the law enforcement officer makes a conclusion based on "experience alone," then they must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." However, Government submits that they will do so by "lay[ing] a proper foundation for any testimony by an expert witness, including that witness's experience and knowledge of certain drug slang." (Gov't's Object. [Doc. # 522] at 3.) Given this representation, there is no pretrial basis for precluding testimony on the topic; at trial, if Defendant is unsatisfied with the expert's qualifications, he may challenge them in a *voir dire*.

However, based on his arguments at the pretrial conference, what Defendant's objection seems to be is not the *qualifications* of a yet-unidentified expert, but the anticipated *conclusion* that "white girl" may refer to fentanyl. "Questions over whether there is a sufficient factual basis for an expert's testimony may go to weight, not admissibility," and are more properly addressed through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Upstate Jobs Party v. Kosinski*, 559 F. Supp. 3d 93, 126 (N.D.N.Y. 2021) (internal quotation and citation omitted). Because Defendant will have the opportunity to do so at trial, the Court finds no basis to preclude the challenged witness testimony, and his motion is DENIED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22 day of September, 2022