UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:21-cr-98 (JBA) |
| *v.* | |
| KENSTON HARRY | September 1, 2023 |

### RULING ON MOTION FOR RECOSIDERATION

Defendant Kenston Harry moves [Doc. # 763] for reconsideration of the Court's denial of safety valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, which permits the Court to depart from imposition of a mandatory minimum sentence if among other things, the defendant "did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." Defendant argues that the Court incorrectly concluded that he had possessed firearms "in connection with" his narcotics offenses and that he should be granted a resentencing in which he receives relief under the safety valve and is subject to no mandatory minimum requirement. The Government argues that Defendant simply "revisits arguments he previously made at the sentencing proceeding" and thus presents no basis for the Court to reconsider its prior decision. [Doc. # 766].

"The major grounds justifying reconsideration" in both civil and criminal cases "are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)[1]. "A motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made," *Caires v. Adams,* No. 3:17-CV-1993(AWT), 2019 WL 8807865, at *1 (D. Conn. Apr. 23, 2019), nor to "advance new facts, issues or arguments not previously presented before the

---

[1] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

[c]ourt." *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001). The standard for granting a motion for reconsideration is "strict," *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995), and a motion for reconsideration is not "a vehicle for relitigating old issues," *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012).

Defendant makes the following four arguments:

- Defendant argues that the Court should reconsider the inference it drew based on the Westchester jail call that Defendant's comment "you know how I ride" referred to a connection between his gun and the drugs in the codefendant's vehicle, and conclude instead that Defendant was referring to the legal problems that would have arisen if he had been found with the gun because it was not registered in New York, and he did not have a New York pistol permit;

- Defendant challenges the Court's conclusion that it could infer Mr. Harry was cognizant of the need to protect himself not only because of the general crime in the neighborhood but because he was dealing drugs based on Harry and Wiley's references during the Westchester call about staying away from the person driving an Audi truck because he had "switched". Defendant maintains that Wiley was only cautioning Harry to be careful of the potential of someone "switching" to cooperate with law enforcement, particularly because other conversations about disgruntled customers never included any discussion of the need for guns to protect the drugs or themselves;

- Defendant argues that the "possession of an assault weapon is not inherently incompatible with self-defense" and that there was "no information" on whether "drug dealers are more likely to possess assault weapons for drug activity as compared to other firearms." (Def.'s Mot. at 7.) To the contrary, Defendant argues that there is no basis for the Court's inference where most guns seized from drug dealers are handguns, rather than rifles.

- Finally, Defendant contends that the facts of his case were distinguishable from *United States v. Greenberg*, 773 Fed. Appx. 50 (2d Cir. 2019)*,* which the Court analogized to in its ruling, because the stash house in *Greenberg* was exclusively used as a stash house, whereas the firearms found at 327 Park Avenue were found in a house also used as a residence and which thus could have been purely for self-defense.

What Defendant seems to fail to sufficiently embrace, however, is that to qualify for the safety valve provision, the *defendant* must prove that he is eligible for relief by a

preponderance of the evidence, *see United States v. Jimenez*, 451 F.3d 97, 102 (2d Cir. 2006); he cannot simply point to what he perceives to be deficiencies in the Government's evidence to the contrary. For example, Defendant presents nothing to allow the Court to determine whether his "you know how I ride" comment refers to his concern over being found with a firearm in the car of his co-conspirator and with a substantial amount of narcotics, or his concerns over his lack of a New York registration and pistol permit as he claims. Likewise, an NBC article on why people like AR-15 weapons in general does not help the Court determine in *this* instance whether Defendant's decision to keep an unlawful assault weapon at his business was motivated only by a desire to have a higher power firearm on hand because the area of Action Audio was crime-ridden, or also because Action Audio was a location where he discussed his drug-dealing conspiracy, stored narcotics, and coordinated drug distribution.

A gun "may be possessed for multiple purposes," *United States v. Lewter*, 402 F.3d 319, 323 (2d Cir. 2005), and the fact that Defendant may have possessed firearms for self-defense purposes does not mean that such possession was not also in connection with his narcotics offenses. To the extent that Defendant protests the difficulty of showing that the firearms kept in "dual purpose" locations were possessed for one purpose but not the other, it is Defendant who chose to comingle his legitimate affairs with his illegal drug trafficking conspiracy, and who now seeks to avail himself of an exception to his otherwise applicable mandatory minimum sentence. Thus, it was his burden to make an affirmative showing that the firearms found in those places were possessed only for legitimate reasons, rather than to protect himself and the drugs stored at Action Audio and 327 Park from the threats that his illegitimate business would have attracted. To hold otherwise would incentivize defendants to use otherwise legitimate residences and businesses as shields to obfuscate their illegal purposes, and reward Defendant for increasing the risk of danger to the occupants at both 327 Park and Action Audio by keeping narcotics there. In other words,

Defendant's task was to provide the Court with some basis from which it could determine that his version of events is more likely than not what happened, rather than the Government's; instead, the constellation of evidence presented by both sides, considered in totality, makes the inference that Defendant possessed the firearms only for general self-defense just as likely as the inference that he possessed them to protect both the members of the drug conspiracy and the drugs that they were distributing.

In sum, Defendant's arguments on interpretation of the evidence and case law are the same ones that the Court fully considered at sentencing, and the Court concludes that its original decision came down on the correct side, however close. Defendant has failed to show by a preponderance of the evidence that he is entitled to the relief provided by the safety valve provision. Defendant's motion for reconsideration is DENIED.

IT IS SO ORDERED.



Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of September, 2023.